582 So.2d 266 (1991)
Timothy L. BERNINGER
v.
GEORGIA-PACIFIC CORPORATION.
No. CA 900184.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
John B. Lambremont, Sr., Baton Rouge, for plaintiff-appellee Timothy L. Berninger.
William Joseph Cleveland, Slaughter, for intervenor-appellee Nat. Union Fire Ins. Co.
Vincent P. Fornias, Baton Rouge, for defendant-appellant Georgia Pacific Corp.
James E. Moore, Baton Rouge, for defendant-appellee Basic Industries, Inc.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
This appeal is from a judgment maintaining an exception of no cause of action.
Timothy Berninger filed a suit for damages against Georgia Pacific Corporation (Georgia Pacific). The suit alleges that *267 Berninger was injured while doing work for Georgia Pacific on Georgia Pacific's premises while employed by Basic Industries, Inc. (Basic). The suit alleges the damages suffered by Berninger were the result of the negligence, strict liability or absolute liability of Georgia Pacific. Georgia Pacific answered and filed a third party demand against Basic alleging an indemnity contract between Basic and Georgia Pacific. Under the indemnity agreement, Basic was alleged to have agreed to "defend, indemnify, and save and hold harmless" Georgia Pacific from all liabilities arising from the performance of the work by Basic on Georgia Pacific's premises. The only exception is alleged to be liability resulting solely from Georgia Pacific's negligence. Basic filed a peremptory exception raising the objection of no cause of action. The trial judge maintained the exception, stating in oral reasons for judgment that:
Basic has filed the exception this morning, no cause of action, citing the Meloy v. Conoco, 504 So.2d 833 (La.1987) case for the proposition that a cause of action for indemnification will not arise until there has been actually a loss or a payment made. This court believes that that is the holding in Meloy, and will grant the exception of no cause of action, dismissing the third party demand.
Georgia Pacific appeals. There are basically two questions. First, whether the Worker's Compensation law prohibits an employer from contractually agreeing to indemnify a third party for damages for injuries to an employee due to some fault of the third party; secondly, if indemnity is allowed, can the cause of action for indemnity be asserted by third party demand prior to a judicial determination of tort liability of the third party to the employee under Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987).

INDEMNITY AGREEMENTS BETWEEN EMPLOYERS AND THIRD PARTIES FOR EMPLOYEES' DAMAGES.
Basic argues that employers are immune from tort claims of their employees, and this immunity extends to third party claims as well as those brought by the employee. They cite as authority for this proposition LeJeune v. Highlands Insurance Company, 287 So.2d 531 (La.App. 3rd Cir.1973), writ denied, 290 So.2d 903 (La. 1974). Basic is correct insofar as tort claims which are brought by third parties against an employer for contribution or indemnity for an employer's negligence in causing an employee's injuries. In LeJeune, the third party tortfeasor asked for contribution or indemnification from an alleged concurrently negligent employer. The court held such actions are prohibited by the exclusive remedy provided for by worker's compensation statutes which make the employer's liability statutory whether negligent or not.
There is no such prohibition where the indemnity is contractual. "There is nothing to prevent the third person and the employer from agreeing that the employer will hold the third person harmless." (emphasis added) Malone & Johnson, Louisiana Civil Law Treatise, Worker's Compensation, § 374, p. 223. It is stated in Fontenot v. Monsanto Co., 363 So.2d 1309, 1312 (La.App. 4th Cir.1978) that:
The exclusiveness of Fontenot's remedy against his employer, River Parish, is of no significance in interpreting the contractual commitment which River Parish has made to Monsanto. Companies who make these kind of indemnity agreements (and insurers who insure, for some agreed upon premium, their validity) have, we believe, made a calculated business decision so to proceed.
As long as Fontenot persists in his claim for damages arising from the performance of his duties at the Monsanto facility while he was employed by River Parish, Monsanto has an equal right under the terms of the particular contractual language contained in the agreement between Monsanto and River Parishto persist in its third party claim against River Parish for indemnification, Fontenot's exclusive remedy against River Parish (limited to workmen's compensation) to the contrary notwithstanding. (emphasis supplied)
Basic argues that the exclusiveness of the worker's compensation remedy should *268 be given consideration in interpreting indemnity agreements. However, we are dealing here with an exception of no cause of action where allegations of the third party demand alleging an indemnity agreement must be accepted as true.
We hold that there is no legal prohibition to the alleged indemnity agreement between Georgia Pacific and Basic.

ASSERTION OF THE INDEMNITY AGREEMENT BY THIRD PARTY DEMAND.
In Meloy, 504 So.2d at 839, the court stated:
An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy... [A]n indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss ... Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid. (emphasis added) (citations omitted)
Basic argues that this language prohibits assertion of indemnity claims by third party demand. We disagree.
La.C.C.P. art. 1111 provides: "The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand." (emphasis added) We recognized in DeLaune v. United States Fidelity and Guaranty Co., 506 So.2d 795 (La.App. 1st Cir.1987), that disallowing a third party demand until the primary obligor has actually paid will prohibit all third party demands. We noted that a third party demand where the third party defendants may be liable for the main demand "is precisely the sort of situation in which a third party demand is appropriate." Delaune, 506 So.2d at 796. Third party demands have traditionally been used to assert indemnity claims even where the claim is precisely the one involved here, a third party claim for indemnity against the employer for injuries to the employee. Cf. Fontenot, 363 So.2d 1309. The question becomes whether the Supreme Court in Meloy intended to place indemnity cases outside the purview of La.C.C.P. art. 1111. We hold they did not.
Meloy dealt specifically with issues certified to the Louisiana Supreme Court by the United States Fifth Circuit Court of Appeals. The issues considered by the Supreme Court were:
(1) the extent to which the Louisiana Oilfield Indemnity Act of 1981 prohibits indemnification agreements in contracts relating to oilfield operations; and (2) whether the allegations of the complainant govern the indemnitor's obligation to defend, and if not, whether the indemnitee can recover its cost of defense after trial on the merits.
Meloy, 504 So.2d at 836. It is obvious that the first issue is not pertinent to this case. It deals only with the validity of indemnification agreements subject to La.R.S. 9:2780, the Louisiana Oilfield Indemnity Act of 1981, which the court held nullifies an agreement to indemnify where there is negligence on the part of the indemnitee. The ruling has no bearing on indemnification agreements such as the one here which is not subject to La.R.S. 9:2780.
We further hold that the second issue decided by Meloy, the duty to defend, is not relevant to whether the claim can be made by third party demand. The contract at issue in Meloy provided not only for indemnity, but went further to provide that, "Contractor further agrees to have any such claim, demand, or suit investigated, handled, responded to and defended at no cost to Company ... even if such claim, demand or suit is groundless, false or fraudulent." Meloy, 504 So.2d at 836, n. 4. La.R.S. 9:2780(A) specifically provides: "The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both" contained in some oilfield contracts. (emphasis added) It is doubtful the Meloy decision can be extended to defense agreements other than in oilfield contracts. However, if it were interpreted to apply to other defense agreements, we do not read Meloy as prohibiting assertion of obligations to defend in third party demands even where the Oilfield Indemnity *269 Act is applicable. In Meloy, the problem presented was allegations in a complaint that initiate the duty to defend in an indemnity agreement. The question was, would allegations that initiated the duty result in the indemnitor either having to defend at that point, or being responsible for defense costs even if the outcome was to exonerate the indemnitee from liability? The court held that unlike insurance contracts, allegations do not initiate the duty to defend in indemnity agreements. However, if, in the final judgment, the indemnitee would have been entitled to defense under the indemnity agreement, the defense costs can then be claimed from the indemnitor. Meloy simply states that the ultimate responsibility for defense costs in indemnity agreements is governed by the result rather than the allegations. It does not prohibit asserting the claim in a third party demand, the merits of which would depend on whether the indemnitee is found responsible in the main demand, not on the allegations of responsibility. In other cases the claim for defense would be a viable claim regardless of the outcome of the main demand since allegations trigger the duty to defend, not results.
Consequently, we find that Meloy does not in any way limit the assertion of claims by third party demand. It merely holds that in indemnity claims there is no legal responsibility for defense or defense costs until the main demand is resolved. We are not called upon here to decide whether the holding in Meloy that the indemnitor actually owed defense or defense costs based only on results, not allegations, applies to indemnity agreements other than those covered by the Louisiana Oilfield Indemnity Act. It suffices for this case that in either event the claim can be asserted by third party demand.
We reverse the judgment of the trial court maintaining the objection of no cause of action and remand for further proceedings. All costs are to be paid by appellee.
REVERSED AND REMANDED.